IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

JAMES LEE CECIL, JR.,              )
     Plaintiff,                        )     Civil Action No. 7:18-cv-00641
                                   )
v.                                 )
                                   )     By:  Elizabeth K. Dillon
DR. KOSCINSKI, *et al.*,           )         United States District Judge
     Defendants.                       )

**MEMORANDUM OPINION**

Plaintiff James Lee Cecil, Jr., a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983.  The only remaining claim in the case is Cecil's claim that defendant Crystal Large, a nurse practitioner, failed to provide adequate medical treatment for his Hepatitis C ("Hep C").[1]  Pending before the court is Large's motion for summary judgment (Dkt. No. 64), which is fully briefed.  For the reasons set forth herein, the motion will be denied.

I.  BACKGROUND

**A.  Cecil's Claims**

In his second amended complaint, filed June 28, 2019, Cecil named Large as the sole defendant.[2]  He alleges that, from the time he arrived at Southwest Virginia Regional Jail in Duffield in December 2018, he requested treatment for his Hep C.  He contends that Large failed to provide the needed treatment and instead allowed him to suffer pain and symptoms associated with his Hep C for approximately seven months.  Relatedly, he alleges that despite Large's claim that she

---

[1]  Cecil argues that he raised a lot of other medical issues in addition to his Hep C.  But the operative complaint—his second amended complaint—only references Large's deliberate indifference toward him with regard to failing to treat his Hep C.  Cecil cannot use his opposition to the motion for summary judgment to present new claims not in his second amended complaint.  *See Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009).

[2]  Cecil's second amended complaint also refers to Mediko, Inc., as a party, but did not assert specific claims against that defendant.  Moreover, in allowing him to file the amended complaint, the court advised Cecil that it interpreted his complaint as identifying Large as the sole defendant and directed Cecil to advise the court within seven days if that was not correct.  (Dkt. No. 51 at 2 n.1.)  Cecil did not timely suggest that he intended to name any another defendant.

prescribed him ibuprofen for 90 days beginning in February 2019, he was not offered this medicine nor did he receive it.  (Am. Compl. ¶ 26.)

The court construes Cecil's complaint as stating an Eighth Amendment claim of deliberate indifference to his serious medical needs.

**B. Background Concerning Hepatitis C Treatment for Virginia Department of Corrections ("VDOC") Offenders[3]**

Beginning in 2015, VDOC instituted a series of guidelines regarding Hep C treatment, and they were updated regularly.  In general terms, as explained in a 2018 decision from another judge of this court, VDOC had "arranged a relationship with Virginia Commonwealth University medical personnel, whereby VCU specialists would treat Hep C inmates who VDOC referred to them." *Reid v. Clarke*, No. 7:16-cv-00547, 2018 WL 3626122, at *2 (W.D. Va. July 30, 2018). The versions of the guidelines differed somewhat, but each

> contained medical testing benchmarks used to determine whether an inmate (1) was referred to VCU for Hep C treatment, (2) subjected to additional testing, or (3) simply monitored [at periodic intervals] without referral to VCU for treatment. The interim guidelines also included "exclusion" criteria (*i.e.*, circumstances that would or could bar a prisoner from receiving treatment), such as drug or alcohol use, unauthorized tattoos, or a pending release date.

*Id.*

Large explains that the guidelines "determine treatment eligibility based upon the inmate's clinical picture as a whole, which includes an interpretation of the viral load, platelet count, AST-to-platelet-ration-index ("APRI") value, and Fibrosis-4 score.  The guidelines also dictate how often an inmate is to be evaluated for worsening Hepatitis C."  (Large's 3rd Aff. ¶ 8, Dkt. No. 65-1.)

As relevant here, Large was operating under the guidelines last revised in January 2019

---

[3] Although Cecil was not incarcerated at a VDOC facility, a document submitted by Large explains that VDOC's Hep C guidelines are followed by contracted medical providers at SWVRJ.  (Dkt. No. 65-2 at 28.)  Moreover, Large avers that she relied on them in treating Cecil.

when she first saw Cecil in February 2019.  (Dkt. No. 100-1.)  Those guidelines first called for an offender to be tested to receive an APRI score.  Large's affidavit refers to Cecil's February 2019 lab work (Dkt. No. 65-2 at 4–5), and the medical notes show that she calculated his APRI score to be .85 and his Fib-4 score to be .96.  (*Id.* at 3; *see also* Cecil Ex. 8, Dkt. No. 95-1 at 72.).  Large avers that those scores did not make Cecil "a candidate for Hepatitis C treatment," and she instead simply scheduled him for repeat lab work in three months.  (Large's 3rd Aff. ¶ 8.)

While Large's statement that Cecil's scores did not make him "a candidate for treatment" may technically be correct, the guidelines in effect at that time show that his scores qualified him for additional testing.  Specifically, he should have been referred for a Fibroscan, (Dkt. No. 100-1 at 4), but Large did not refer him for one.  Under the January 2019 Guidelines, offenders with an "APRI $\geq$ 0.5 **and** < 1.5 **or** a Fib-4 $\geq$ 1.45 **and** $\leq$ 3.25" were in the category of "indeterminate" and "should have a Fibroscan done in order to further assess their degree of Fibrosis."  (*Id.*)  Cecil's APRI was a .85, so he qualified for a Fibroscan under the first part of that benchmark.  Before this court, Large does not acknowledge that mistake, nor does she explain why she did not refer him for a Fibroscan.  She simply says that he was ineligible for "treatment."  (Large's 3rd Aff. ¶ 8.)  Depending on his Fibroscan score and other factors, though, he may have been eligible for treatment.  (Dkt. No. 100-1 at 5–6.)  She also emphasizes that he failed to report or exhibit any symptoms of Hep C, (Large's 3rd Aff. ¶ 11), but his medical records reflect that he complained repeatedly of fatigue, in addition to general assertions of pain.

As ordered by Large, Cecil had follow-up lab work done near the end of April.  The VDOC guidelines were updated on an unspecified date in April 2019.  (Dkt. No. 65-2 at 38.)[4]  It is unclear

---

[4]  Neither party has provided a copy of the April 2019 version of the guidelines.  Large's third affidavit appears to refer to the April 2019 Guidelines as being attached (Dkt. No. 65-2 at 7–22), but that document is a copy of the January 2019 Guidelines (*see* Dkt. No. 65-1 at 16.)  The April 2019 Guidelines were filed in another case, however, and are part of the public docket in that case.  *See Hinton v. Amonette*, No. 3:18CV59, 2020 WL 1220832, at *2 (describing exhibits); *id.* ECF No. 39-2, at 26-35.  The court's statements about the April 2019 Guidelines are based on that

whether they should have been applied in evaluating Cecil's April lab work.  But under either the January or April 2019 Guidelines, Cecil should have been referred for a Fibroscan.

First, under the January 2019 Guidelines, Cecil's April APRI score was a .87, which should have resulted in his being referred for a Fibroscan.[5]  The April 2019 Guidelines effectively do away with APRI scoring as a benchmark and instead require that "[a]ll offenders diagnosed with Chronic Active Hepatitis C should have a Fibroscan done."  (April 2019 Guidelines, Section V.A.)  Then, based on the Fibroscan "score" and other factors, the offender is placed in one of three categories and prioritized for treatment.  Once the April 2019 Guidelines were in effect, then, Cecil should have been referred for a Fibroscan under those guidelines, too.

Because of Large's failure to order a Fibroscan in February, one was not ordered for Cecil until June, after continued complaints by Cecil and after he was seen by another VDOC provider, Dr. Hurlburt.  Cecil avers that Dr. Hurlburt also admitted to him that Large should have ordered a Fibroscan for him.  Apparently, because of delays in scheduling, the test was not performed until August 6, 2019, two months after Dr. Hurlburt ordered it and approximately six months after Large should have ordered it, had she properly followed the guidelines in effect in February.  (Cecil Aff. ¶¶ 20–22, Dkt. No. 95-1 at 7.)  According to Cecil, the Fibroscan confirmed that he had stages F2 and some F3 fibrosis.  (*Id.* ¶ 23.)  The report itself states that the impression was "Abnormal 2-D shear wave elastography with elevated median shear wave velocities of 1.93 m/s.  This indicates a moderate risk of clinically significant hepatic fibrosis (stages F2 and some F3).  Additional testing

---

document.  But even if the court did not consider the April 2019 Guidelines in evaluating Cecil's claim, the court would still conclude that there are disputes of fact as to whether Large was deliberately indifferent based on her lack of action in response to Cecil's January test results.

[5] Neither party points to any place in Cecil's medical records where his APRI score was calculated based on his April lab work, but the formula is set forth in the VDOC Guidelines itself.  (Dkt. No. 100-1 at 11.)  Because part of the formula—the UNL ("upper normal limit")—is not in the Guidelines, the court uses 40 IU/L for the UNL, which "[m]ost experts recommend."  *See* University of Washington, *AST to Platelet Ration Index (APRI) Calculator*, https://www.hepatitisc.uw.edu/page/clinical-calculators/apri (last visited September 25, 2020); WebMD, *What Is the APRI Score*, *https://www.webmd.com/hepatitis/what-is-apri-score* (last visited September 25, 2020) (noting same).

may be appropriate." (Dkt. No. 95-1 at 74). Cecil ultimately was approved for Hep C treatment and began treatment on May 14, 2020. (Dkt. No. 97.)

Had the results of the Cecil's Fibroscan been obtained in April and been the same as they were in August, he was eligible for treatment under the April 2019 Guidelines. The April 2019 Guidelines direct that inmates in priority levels 1 and 2, which includes inmates who are determined to have liver scarring or fibrosis, should receive treatment for Hep C. The Guidelines direct that, based on a Fibroscan score measured as E{kPa}, an individual should be assigned a stage of disease of F0 to F4. (April 2019 Guidelines, Section V.C.) Persons with scores that correspond with F2 stage disease (E{kPA} score 7.0 to 9.0) are priority level 2 and qualify for treatment. (April 2019 Guidelines, Section VI.A.) Persons with scores that correspond with F3 stage disease (E{kPA} greater than 9.0) qualify as Priority Level 1. The reference in Cecil's Fibroscan result to "fibrosis (F2 and some F3)" presumably means that he has that stage of disease, which would have rendered him eligible for treatment under the benchmarks just listed.[6] In her affidavit, Large summarily states that Cecil was not a candidate for treatment even under the April 2019 Guidelines. She does not explain why, however, and her testimony appears contrary to the April 2019 Guidelines.

Shortly before his latest incarceration, on August 18, 2018, Cecil visited a physician at Carilion Clinic for his Hep C, who ordered lab work. Notes from that visit and the lab results were requested by Dr. Hurlburt in June 2019 and are now part of Cecil's medical file.[7] (*See* Dkt. No. 95-

---

[6] None of the numbers on the values on Cecil's report appear to correspond with the value referenced in the guidelines, which is used to determine the stage of disease on a scale F0 to F4. Instead, the 2019 Guidelines refer to values measured in E{kPa} (apparently called the Young modulus of elasticity), while Cecil's report refers to shear wave velocities of 1.88 m/s (mean) and 1.93 m/s (median). Based on the court's research, there is a formula that allows one value to be converted to the other, but the court need not perform that calculation because Cecil's Fibroscan report identified his stages of disease.

[7] Cecil also complains that Large failed to obtain his prior medical records, after he told her about them in February 2019. The medical record reflects that Large sought the records from Carilion's gastroenterology department, but Cecil alleges that he never said he was seen at that department, and points out that Dr. Hurlburt was able to obtain his records without problem. (Cecil Aff. ¶ 26.) A December 2018 note from Dr. Hurlburt, though, referenced needing to obtain records from "Carilion GI," (Dkt. No. 65-2 at 6), so Large may have been following that instruction. In any

1 at 11–34.)  Cecil notes that prior to his incarceration, he had F0 stage disease, but by the time he received his Fibroscan more than a year later, he had F2 and F3 stage disease.  (Pl.'s Decl. ¶ 24, Dkt. No. 95-1.)

Cecil's complaint also claims that he was in significant pain and that he was not given ibuprofen.  Large disputes this and has presented medication administration records that she says show otherwise.  She also notes that she is not responsible for the administration of medicine.  The court need not resolve the issue at this point because, even if were undisputed that Cecil had been prescribed and taken his medication, there is still a dispute of fact precluding Large from obtaining summary judgment based on the failure to refer him for a Fibroscan.

## II.  DISCUSSION

### A.  Motion for Summary Judgment

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[8]  A material fact is one that "might affect the outcome of the suit under the governing law."  *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of material fact is "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party.  *Anderson*, 477 U.S. at 248–49.

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.

---

event, to the extent that the issue is relevant to deliberate indifference by Large, it can be addressed at trial.
    [8]  The court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted.  *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

*See* Fed. R. Civ. P. 56(c), 56(e).  All inferences must be viewed in a light most favorable to the non-moving party, but the nonmovant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."  *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## B.  Eighth Amendment

"It is beyond debate that a prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment."  *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019).  To demonstrate deliberate indifference, an inmate must show that (1) he has a medical condition that has been "diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" and (2) the defendant "had actual knowledge of the plaintiff's serious medical needs and the related risks, but nevertheless disregarded them."  *Id.* at 356–57.  The first component is an objective inquiry and the second is subjective.  *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017).

The subjective component requires "subjective recklessness" in the face of the serious medical condition.  *Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994).  "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."  *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997).  To qualify as deliberate indifference, the health care provider's treatment "must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837.

Cecil admits that he is now receiving treatment for his Hep C.  Nonetheless, a delay in medical treatment may constitute deliberate indifference.  *See Smith v. Smith*, 589 F.3d 736, 739 (4th Cir. 2009).  The Fourth Circuit has held, although in unpublished decisions, that where a

prisoner's claim is based on a delay in treatment, he must also show that the delay caused him to suffer "substantial harm."  *Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008).

Large's summary judgment motion does not argue that Cecil fails to satisfy the objective element.  She contends, though, that she was not deliberately indifferent.

Taking the facts in the light most favorable to Cecil, it appears that, prior to the February 14, 2019 appointment, Large was informed Cecil was complaining of fatigue, "liver pain," and a lack of treatment for his Hep C.  His lab work, which Large reviewed, indicated that he should have been referred for a Fibroscan, pursuant to VDOC's January 2019 Guidelines, yet she did not refer him. She does not offer any reason for this failure.

Large seeks to avoid liability by arguing that she did not see him Cecil again after February. But this does not absolve her of all liability.  In addition to her failure in February, a jury also could find that Cecil remained in her care, both because she had prescribed medication for him and because she ordered lab work again for April.  A jury also could find that she had a responsibility to follow up on those April results.  And a jury might reasonably find that the delay in further testing and treatment caused by Large's actions caused substantial harm to Cecil, not only in experiencing continuing pain and fatigue, but also in allowing his Hep C to progress.

The court recognizes that it may well be that Large's failure to refer him as required by VDOC's treatment guidelines was simply negligent and not deliberate indifference.  It is well recognized that "negligent medical diagnoses or treatment, without more, do not constitute deliberate indifference."  *Webb*, 281 F. App'x at 166.  Instead, to qualify as deliberate indifference, the prison official's conduct must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Miltier*, 896 F.2d at 851.  But here, Large had knowledge, based on lab results that she reviewed and the guidelines she says she was required to follow, that Cecil's condition warranted further testing.  She not only failed to refer him

for a Fibroscan, but she then failed either to review his April labs or to take appropriate steps based on them, such as referring him for the Fibroscan then.  Cecil alleges that he suffered significant pain during that period of time, and it is also apparent that he should have been getting additional testing and perhaps treatment for his Hep C for some of that time.

It is also worth noting that, in her affidavit in this case, Large maintains that she did not err in any way, emphasizing that Cecil was not a candidate for treatment under the applicable Guidelines.  He may not have been a candidate for treatment, but that could only be determined after a Fibroscan was performed, and she failed to order one.  Also, a jury could interpret Large's failure to admit she made a mistake as evidence of indifference.

In short, a reasonable jury could find that Large was deliberately indifferent to Cecil's serious medical need and that he was harmed by the delay in treatment.  Accordingly, she is not entitled to summary judgment.

### III.  CONCLUSION

For the reasons stated above, Large's motion for summary judgment will be denied. Additionally, because the parties had previously expressed an interest in mediation, the court will refer the case for a settlement conference conducted by U.S. Magistrate Judge Joel C. Hoppe.  An appropriate order will be entered.

Entered: September 29, 2020.

*/s/ Elizabeth K. Dillon*

Elizabeth K. Dillon
United States District Judge